[L. A. No. 23494.   In Bank.   Nov. 25, 1955.]

VICTOR VALLEY HOUSING CORPORATION (a Corporation), Respondent, v. COUNTY OF SAN BERNARDINO, Appellant.

[L. A. No. 23495.   In Bank.   Nov. 25, 1955.]

MESA ESTATES, INC. (a Corporation), Respondent, v. COUNTY OF SAN BERNARDINO, Appellant.

Albert E. Weller, County Counsel, J. B. Lawrence, Deputy County Counsel, Felix S. Wahrhaftig, Edmund G. Brown, Attorney General, E. G. Benard and James E. Sabine, Assistant Attorneys General, for Appellant.

Holbrook, Tarr, Carter & O'Neill, W. Sumner Holbrook, Jr., Francis H. O'Neill and William J. Johnstone, for Respondents.

Horton & Foote, Joseph K. Horton, Rex A. McKittrick, Lawler, Felix & Hall, Riley & Hall, Latham & Watkins, Dana Latham, Samuel J. Nunn, Charles P. Lester, Overton, Lyman, Prince & Vermille, Eugene Overton, Allard, Shelton & O'Connor, Irl D. Brett, Hodge L. Dolle, Head, Jacobs, Corfman & Jacobs, Hill, Farrer & Burrill, Paul, Hastings & Janofsky, S. V. O. Prichard, Gibson, Dunn & Crutcher, Herbert F. Sturdy and Frank L. Mallory as Amici Curiae on behalf of Respondents.

TRAYNOR, J.—Victor Valley Housing Corporation and Mesa Estates, Inc., California corporations, hereinafter called Victor Valley and Mesa, brought actions against the county of San Bernardino (Rev. & Tax. Code, § 5103) for recovery of taxes paid under protest that were levied against possessory interests in tax exempt land and improvements for the tax year 1953-1954. The actions were consolidated for trial, and the county appeals from judgments in favor of plaintiffs and orders remanding the proceedings to the county board of equalization.

Victor Valley and Mesa are housing projects of 400 and 250 units, respectively, for military and civilian personnel assigned to duty at George Air Force Base in San Bernardino County. The projects are located on land owned by the United States government and leased to Victor Valley and Mesa for 75 years at annual rentals of $100, were constructed by the lessees pursuant to the provisions of title VIII of the National Housing Act (12 U.S.C.A. §§ 1748-1748h) and section 1270 of title 10 of the United States Code, were financed by loans secured by mortgages insured by the Federal Housing Administration, and were subleased to persons designated as tenants by the commanding officer at rents regulated by the Federal Housing Administration and the Air Force. On completion, all improvements became the property of the federal government, and Victor Valley and Mesa manage the projects under leases that are essentially identical with the lease between De Luz Homes and the government (see *De Luz Homes* v. *County of San Diego, ante,* p. 546 [290 · P.2d 544]) and that provide, as in the case of De Luz, that the lessee shall pay ''all taxes, assessments, and similar charges which, at any time during the term of the lease, may be taxed, assessed or imposed upon the Government or upon the Lessee with respect to or upon the leased premises.'' (10 U.S.C.A. § 1270d; 12 U.S.C.A. § 1748f.)

The assessor valued the possessory interests of Victor Valley and Mesa in land improvements for the tax year 1953-1954 at $484,200 and $344,000, respectively, and levied taxes thereon of $25,226.82 and $17,922.40.* Victor Valley and Mesa paid the levies under protest and filed applications with the county board of equalization for reduction of the valuations to zero. At the hearing of the application, the assessor testified that in valuing the leaseholds he estimated the fee value of the land, imputed an income thereto of 7.5 per cent, deducted the annual rent paid to the government from such income, capitalized the difference between imputed income and rent at 7.5 per cent, deducted 5 per cent of the product ''in recognition of the restrictive conditions of the lease,'' and deemed the resulting figure the present value of the possessory interest in land. The replacement cost of improvements, less deductions for depreciation and restrictions created

---

*The assessor made initial assessments for the tax year 1953-1954 of $398,600 against Victor Valley and $356,660 against Mesa on the assumption that the lessees owned the improvements in fee, but at his request the board of equalization ordered these assessments cancelled.

by the lease, was deemed the value of the possessory interest in improvements, and the sum of the values of the possessory interests in land and improvements was considered the present value of the leasehold.

As a check on the foregoing method, the assessor made an analysis of anticipated earning power by estimating future annual gross income, deducting therefrom operating expenses, payment into a replacement reserve required by the Federal Housing Administration, and rent paid to the government, and capitalizing the difference at a rate thought adequate to allow for risk, interest, and taxes. He did not deduct payments of principal and interest on the lessees' mortgage debts or amortization of their investments in the leaseholds. Since he thought that the buildings would be greatly depreciated in 53 years, he limited his expectation of actual income to such period, and determined the present value of the remaining 20 years of the lease by imputing an income to the land, deducting therefrom rent to be paid to the government, and capitalizing the difference. The sum of the capitalized values of anticipated and imputed earnings was deemed the value of the leasehold. Since the figure obtained by the first method was lower than that obtained by the immediately foregoing method, he selected the former as the basis of his assessment, reduced it to 20 per cent thereof to allow for the ratio of assessment value to market value, and entered it on the tax roll. Victor Valley and Mesa substantially agreed with the amount of gross income and operating expenses forecast by the assessor, but contended that in estimating net income, he should deduct allowances for deferred replacement of assets and payment of principal, interest, and insurance on their mortgage debts.

The board of equalization ordered that the present value of improvements that will revert to the government on termination of the leases be deducted from the value of the leaseholds and otherwise affirmed the method of valuation employed by the assessor. The amount of the valuation of Mesa was not affected by the board's order, and that of Victor Valley was reduced by but $1,000. Claims for refund were denied by the board of supervisors. (Rev. & Tax. Code, §§ 5096-5099.) After receiving in evidence the documents and transcript of testimony introduced before the board of equalization, the court held the assessor's method of valuation improper and remanded the proceedings to the board with directions to take evidence on the amount of money in-

vested in the leaseholds and the "reserve necessary for future but presently anticipable ordinary maintenance and repair." The board was directed to deduct rent to the government, operating expenses, amortization, a specified sum "for deferred maintenance reserve for replacement of household equipment," and a specified sum "for the future but presently anticipable ordinary maintenance and repair of the housing units" from anticipated annual gross income, to capitalize the difference for the remaining years of the lease at 7.5 per cent, to reduce the amount so computed to 20 per cent thereof to allow for the ratio of assessed value to market value, and to enter the net amount on the tax roll, provided that it enter an amount no less than $3,900.

The method used by the assessor was held inappropriate for valuing leaseholds of the kind in question in *De Luz Homes* v. *County of San Diego, ante,* p. 546 [290 P.2d 544]), wherein it was stated that under the circumstances attending such leaseholds, the value of plaintiffs' possessory interests can best be estimated in terms of actual income rather than imputed income, and that in any event, an analysis of imputed income must make an adequate distinction between imputed gross income and imputed net income.

The income analysis used by the assessor as a check against his imputed income estimate requires further discussion. In the assessor's income analysis, it is assumed that since the buildings will be greatly depreciated at the end of 53 years, actual income can be anticipated only for such time, and that to value the remaining 20 years of the lease, it is necessary to impute an income to the land alone. The assessor's exhibits make clear, however, that in 53 years it is not expected either that the buildings will have come to the end of their economic life or that the receipt of income will cease, but it is expected that the cost of the buildings will be largely amortized. Limitation of anticipated earnings to the period of cost amortization, however, makes value dependent on the income accounting of the present owner of property, and is contrary to the statutory standard of "full cash value." (Rev. & Tax. Code, §§ 401, 110; *De Luz Homes* v. *County of San Diego, ante,* p. 546 [290 P.2d 544].)

In estimating the value of future earning power, it is necessary to take into account anticipated net earnings for the full period during which it is expected that income will be received. Since the terms of the lease and the statute under which it was drawn (see especially, 12 U.S.C.A. § 1748b

(b)(2)) contemplate that the possessory interest will exist for the full period of the lease, the assessing authorities could properly limit expectations of future income to a period of time shorter than the term of the lease only if they believed that income in fact will be zero after such time.

The order of the court was similar to the order of the trial court in *De Luz Homes* v. *County of San Diego* (*ante*, p. 546 [290 P.2d 544]), and must be disapproved as contrary to the statutory standard of "full cash value." (Rev. & Tax. Code, §§ 401, 110.) Moreover, the deductions ordered for "deferred maintenance reserve for replacement of household equipment" and for "future but presently anticipable ordinary maintenance and repair of housing units" raise additional questions. ▮▮ In estimating future net earnings, it is proper to deduct expected maintenance expenditures from the anticipated gross income of the years in which such expenditures will be made or incurred, and anticipated net income accordingly is reduced for years in which large expenditures are anticipated. To make deductions, however, under accounts entitled "deferred maintenance," "future but presently anticipable ordinary maintenance and repair," or "depreciation," for amounts that do not reflect anticipated expenditures for the years in which they are deducted but that instead represent amortization of investment is to substitute a method of valuation dependent on the profitableness of property to its present owner for the statutory standard of "full cash value." Although expenses may prove to be more costly and net income less than presently anticipated, such risks properly may be taken into account in selecting the rate of capitalization. (See 1 Bonbright, The Valuation of Property, pp. 259-262.)

The judgments and orders are reversed with directions to the trial court to remand the proceedings to the county board of equalization for action in accord with the opinions expressed above and in *De Luz Homes* v. *County of San Diego* (*ante*, p. 546 [290 P.2d 544]). Each party shall bear its own costs on appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Respondents' petitions for a rehearing were denied December 21, 1955.