[Sac. No. 6568. In Bank. Nov. 25, 1955.]

FAIRFIELD GARDENS, INC. (a Corporation), Appellant,
v. COUNTY OF SOLANO, Respondent.

Holbrook, Tarr, Carter & O'Neill, W. Sumner Holbrook, Jr., and Francis H. O'Neill for Appellant.

Horton & Foote, Joseph K. Horton, Rex A. McKittrick, Lawler, Felix & Hall, Riley & Hall, Latham & Watkins, Dana Latham, Samuel J. Nunn, Charles P. Lester, Overton,

Lyman, Prince & Vermille, Eugene Overton, Allard, Shelton & O'Connor, Irl D. Brett, Hodge L. Dolle, Head, Jacobs, Corfman & Jacobs, Hill, Farrer & Burrill, Paul, Hastings & Janofsky, S. V. O. Prichard, Gibson, Dunn & Crutcher, Herbert F. Sturdy and Frank L. Mallory as Amici Curiae on behalf of Appellant.

Kenneth I. Jones, County Counsel, James M. Shumway, Assistant County Counsel, Felix S. Wahrhaftig, Edmund G. Brown, Attorney General, E. G. Benard and James E. Sabine, Assistant Attorneys General, for Respondent.

TRAYNOR, J.—Fairfield Gardens, Inc., a California corporation, hereinafter called Fairfield, brought an action against the county of Solano to recover taxes paid under protest that were levied against its possessory interest in tax exempt land and improvements. (Rev. & Tax. Code, § 5138.) It appeals from a judgment that it recover nothing and that defendant recover costs.

Fairfield constructed two housing projects containing 980 dwelling units on separate plots of land owned by the United States government at Travis Air Force Base in Solano County. The projects were built pursuant to the provisions of title VIII of the National Housing Act (12 U.S.C.A. §§ 1748-1748h [known as the Wherry Act]) and section 1270 of title 10 of the United States Code, were financed by loans secured by mortgages insured by the Federal Housing Administration, and were subleased to military and civilian personnel assigned to duty at the base and designated as tenants by the commanding officer at rents regulated by the Federal Housing Administration and the Air Force. On completion, all improvements became the property of the federal government, and each of the projects is leased to Fairfield for 75 years at an annual ground rental of $100. The provisions of the lease are essentially identical with those of the lease between the government and the De Luz Homes (see *De Luz Homes* v. *County of San Diego, ante,* p. 546 [290 P.2d 544]), and, as in that case, state that the lessee shall pay all "taxes, assessments, and similar charges which, at any time during the term of the lease, may be taxed, assessed or imposed upon the Government or upon the Lessee with respect to or upon the leased premises." (See 12 U.S.C.A. § 1748f.)

The assessor valued Fairfield's possessory interests in the land and improvements (Rev. & Tax. Code, §§ 107, 104) for

the tax year 1953-1954 at $1,574,880 and levied a tax thereon of $64,727.56. Contending that the value of the leasehold was worth no more than a nominal sum of $20, Fairfield filed an application for reduction of the valuation and cancellation of the tax thereon with the county board of equalization. (Rev. & Tax. Code, §§ 1603, 1605, 1607, 4986.) At the hearing of the application (Rev. & Tax. Code, § 1609), Fairfield introduced forecasts of maximum potential gross income, expected vacancies, and anticipated expenses, including operating expenses, required payments into a replacement reserve, and payments of principal and interest on its mortgage debt. It contended that in valuing the leasehold, the assessing authorities should deduct all of the foregoing expenses from gross income and should capitalize the difference for a period of time equal to the anticipated useful life of the improvements at a rate adequate to allow for risk, interest, and taxes. It also advocated an alternative method of valuation, whereby its total investment in the leasehold, together with interest thereon, would be deducted in annual aliquot portions from anticipated annual gross income, and the difference would be capitalized over the remaining term of the lease. Under either method, it asserted, the capitalized value of future income is less than zero, and therefore the leasehold has no taxable value.

In opposition to the application, the assessor stated that he estimated that gross income from the leasehold, after a vacancy allowance of 3 per cent in dwelling units and 50 per cent in carports, will be $892,000 per year and that net income, after an allowance of $321,872 for operating expenses and the required payment into the replacement reserve, will be $571,020 [*sic*] per year. He stated that in his opinion a discount of 6 per cent for risk and interest and 2 per cent for taxes would be adequate, and that future annual net income from the leasehold, when capitalized at such discount, has a present value of $7,160,000. He stated that he deducted 10 per cent for "restrictions in the leases," reduced the difference to 25 per cent thereof to allow for the ratio of assessment value to market value, apportioned the net amount, $1,574,880, between the two projects in proportion to the number of dwelling units in each, and entered $792,030 and $792,850 on the tax roll as the value of the possessory interests in each project. In allowing for anticipated annual expenses, the assessor included, *inter alia*, office salaries, telephone and

telegraph, legal and auditing services, janitorial materials, water and sewage, cleaning and grounds payroll, painting, repairs, insurance, and rent paid to the government by Fairfield, but he did not include either Fairfield's payments of principal and interest on its mortgage debt or an allowance for amortization of its investment in the leasehold. Although some differences existed between the assessor and Fairfield in respect to amounts of anticipated income and expenses, the major point at issue was whether deductions for the lessee's debt payments or amortization of its investment in the leasehold should be made from anticipated gross income.

The board sustained both the method of valuation used by the assessor and the amount of the valuation. After receiving in evidence the documents and transcript of testimony introduced before the board, the court reduced the present value of anticipated net income to $6,977,692 to correct arithmetical errors and affirmed the decision of the board. Fairfield appeals, contending that in valuing its leasehold by an analysis of earning power, the assessing authorities must deduct payments of its mortgage debt or amortization of its investment from anticipated annual gross income.

Fairfield's contentions have been determined adversely to it in *De Luz Homes* v. *County of San Diego* (*ante,* p. 546 [290 P.2d 544]), wherein it was stated that deduction of mortgage payments would be contrary to section 1 of article XIII of the California Constitution and that a deduction for amortization of the lessee's investment would substitute a method of valuation dependent on the profitableness of property to its present owner for the statutory standard of "full cash value." (Rev. & Tax. Code, §§ 401, 110.)

The method used by the assessor in the present case is similar to that approved in De Luz, but we must disapprove it to the extent that it deducts rent paid by Fairfield to the government from anticipated annual gross income. The rent that a leasehold would command on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other is based on expected future net income from the leasehold without regard to the rent presently paid by the lessee, and therefore such rent is not deducted in estimating the earning power of the leasehold. The assessment of the possessory interest of Fairfield for the tax year 1953-1954, however, need not be set aside because of the erroneous deduction of the $200 rent paid to the government, for although the error was favorable to the

taxpayer, the county did not appeal (*Hamilton* v. *Abadjian,* 30 Cal.2d 49, 53 [179 P.2d 804] ; *Estate of Keith,* 175 Cal. 26, 28 [165 P. 10]), and, moreover, *de minimis non curat lex.* (*Merrill* v. *Hurlburt,* 63 Cal. 494, 497; see *Miller & Lux* v. *Richardson,* 182 Cal. 115, 128 [187 P. 411] ; *H. & W. Pierce, Inc.* v. *County of Santa Barbara,* 40 Cal.App. 302, 306 [180 P. 641] and cases there cited.)

A second difference between the method used by the assessor in the present case and that approved in De Luz is the deduction from the present value of future net income in the present case for ''restrictions in the lease, consisting of rent ceilings, replacement requirements, etc.'' In De Luz, the assessor estimated the fee value of land and improvements in the leasehold and deducted a percentage thereof as an allowance for limitations imposed by the lease. We disapproved the entire method of valuation, and stated in regard to the deduction from the value of the fee that there was no indication ''either that the percentage deducted is an adequate or proper measure of such limitations, or that the lease in fact imposes any burdens on the fee.'' The deduction in the present case, however, is not from the value of the fee but from the expected earning power of the leasehold, and makes proper allowance for the risk that earnings may be less than presently expected. Although the risk that future income may be less than presently expected may be reflected adequately in the estimate of future annual income and in a capitalization rate computed according to risk, interest, and provisions for replacement of assets (see *De Luz Homes* v. *County of San Diego, ante,* p. 546 [290 P.2d 544] ; 1 Bonbright, The Valuation of Property, pp. 259-262; Finney, Principles of Accounting [3d ed.], ch. 10), the fact that a separate deduction was made for it in the present case does not invalidate the assessor's method of valuation.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied December 21, 1955.