[L. A. No. 24968. In Bank. Apr. 24, 1959.]

THE TEXAS COMPANY (a Corporation), Appellant, v. THE COUNTY OF LOS ANGELES et al., Respondents.

[L. A. No. 25102. In Bank. Apr. 24, 1959.]

FORSTER SHIPBUILDING COMPANY, INC. (a Corporation) et al., Appellants, v. COUNTY OF LOS ANGELES, Respondent.

J. A. Tucker, C. L. Mead, Jr., R. K. Barrows, Holbrook, Tarr & O'Neill, W. Sumner Holbrook, Jr., and Francis H. O'Neill for Appellants.

J. Kerwin Rooney, Port Attorney (Oakland), and Robert G. Cockins, City Attorney (Santa Monica), as Amici Curiae on behalf of Appellants.

Harold W. Kennedy, County Counsel, and Alfred Charles DeFlon, Deputy County Counsel for Respondents.

Stanley Mosk, Attorney General, James E. Sabine, Assistant Attorney General, Ernest P. Goodman, Deputy Attorney General, Felix S. Wahrhaftig, Albert E. Weller, County Counsel (San Bernardino), J. B. Lawrence, Deputy County Counsel, James Don Keller, District Attorney and County Counsel (San Diego), Carroll H. Smith, Deputy County Counsel, Roy A. Gustafson, District Attorney (Ventura), Joel E. Ogle, County Counsel (Orange), Stephen K. Tamura, Assistant County Counsel, and Mandle Rottman as Amici Curiae on behalf of Respondents.

TRAYNOR, J.—Plaintiffs brought these actions to recover taxes for the years 1956 and 1957 on possessory interests in tax-exempt lands owned by the city of Los Angeles. Judg-

ments for defendants were entered after their demurrers were sustained, and plaintiffs appeal.

The basic issue presented is whether the value of a possessory interest in tax-exempt land under the capitalization of income method of valuation is the present worth of the use of the land for the unexpired term of the lease or that worth less the present worth of rentals to become due.

Plaintiffs contend that the county board of equalization erred in sustaining assessments based on the present worth of the use of the land for the unexpired term of the lease. They point out that the "full cash value" standard of assessment (Const., art. XI, § 12; Rev. & Tax. Code, § 401), is defined as "the amount at which property would be taken in payment of a just debt from a solvent debtor" (Rev. & Tax. Code, § 110), or "the price it would bring if offered on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other" (*DeLuz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 563 [290 P.2d 544]), and that a prospective assignee of the lease would pay only the difference between the value of the use he would receive and the rental obligation he would assume. Accordingly, they conclude that it is that difference or bonus value, if any, that is the taxable value of the leasehold.

Plaintiffs would also arrive at the same valuation for the leasehold by deducting the value of the claimed interest of the lessor in the land from the value of the fee. Thus, the value of the fee is taken as the present worth of the use of the land in perpetuity. The lessor retains the present value of the use of the reversion plus the present value of the rents reserved. If the present value of the rents reserved is equal to the present value of the use for the unexpired term of the lease, the lessor's interest would be equal to the fee value and the lessee's interest would be valueless. Plaintiffs conclude that under either of these approaches a possessory interest has value only if the value of the use of the land exceeds the rent payable under the lease.

Defendants contend that the taxable interest is the right to possession and use of the land for the unexpired term of the lease and that its value is not lessened by the amount the lessee has agreed to pay for it. They contend that there is no distinction for tax purposes between granting the possession and use in perpetuity by a sale of the fee and granting them for a limited period by a lease, that in neither case may the cost of the interest granted be deducted from

its value. In the case of a lease, they would divide the total value of the fee as determined by its use according to the value of the uses for the respective periods involved. Thus the value of the lessee's interest would be determined by the present value of the use for the period of the lease and the value of the lessor's interest by the present value of the use thereafter. Together they would equal the present value of the use in perpetuity, or fee value. They conclude that the lessor's right to receive rent is not an interest in the land that must be deducted to determine the value of the lessee's interest but only the price the lessee must pay for it.

*DeLuz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546 [290 P.2d 544] ; *Fairfield Gardens, Inc.* v. *County of Solano,* 45 Cal.2d 575 [290 P.2d 562] ; *Victor Valley Housing Corp.* v. *County of San Bernardino,* 45 Cal.2d 580 [290 P.2d 565] ; and *El Toro Dev. Co.* v. *County of Orange,* 45 Cal.2d 586 [290 P.2d 569], fully support defendants' contentions. Those cases all involved the valuation of long-term possessory interests in federally owned property by the capitalization of income method. Relying on *L. W. Blinn Lbr. Co.* v. *County of Los Angeles,* 216 Cal. 474 [14 P.2d 512] ; and *Hammond Lbr. Co.* v. *County of Los Angeles,* 104 Cal.App. 235 [285 P. 896], the taxpayers contended that deductions from expected gross income should be made both for rent and amortization of the cost of improvements that became the property of the lessor and would revert to it on the termination of the lease. Although the assessors had allowed deductions for the nominal ground rental of $100 per year applicable to each leasehold, they had denied deductions for amortization. We concluded, however, that no distinction could be made between rent and the cost of improvements that revert to the lessor, for both were part of the purchase price of the leasehold, and held that no deduction could be made for that purchase price. We disapproved statements to the contrary in the Blinn case and pointed out that the assessor's allowance of a deduction for rent in the Hammond case did not control that decision. (*DeLuz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 567, 570 [290 P.2d 544].)

Plaintiffs contend, however, that in the DeLuz case and its companion cases the court was concerned only with deductions for rent paid in the past, not rent to become due in the future. There is no merit in this contention. We were concerned with deductions from *expected* gross income, deductions that would necessarily be made, if allowed, against in-

come to accrue in the future. Obviously only future rent could be relevant in this context. Thus, in *Fairfield Gardens, Inc.* v. *County of Solano,* 45 Cal.2d 575, 578-579 [290 P.2d 562], we stated: ''The method used by the assessor in the present case is similar to that approved in DeLuz, but we must disapprove it to the extent that it deducts rent paid by Fairfield to the government from anticipated annual gross income. The rent that a leasehold would command on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other is based on expected future net income from the leasehold without regard to the rent presently paid by the lessee, and therefore such rent is not deducted in estimating the earning power of the leasehold. The assessment of the possessory interest of Fairfield for the tax year 1953-1954, however, need not be set aside because of the erroneous deduction of the $200 rent paid to the government [two leaseholds were involved], for although the error was favorable to the taxpayer, the county did not appeal [citations], and, moreover, *de minimis non curat lex.* [Citations.] '' Since the deduction involved had been made from ''anticipated annual gross income,'' it is clear that the $200 rent referred to was not a single payment made in the past but the obligation to pay $200 each year in the future pursuant to the terms of the existing leases.

A leasehold is not less valuable because it has not been paid for in advance, and to draw a distinction between rent paid and rent to be paid confuses the equity the lessee has in the leasehold with its value. That equity may arise either from the lessee's prepayment of rent or from an excess of the value of the use over the future rent agreed to be paid for it. It may not exist at all. In any event it is of no moment to a prospective purchaser interested only in the value of the use and possession of the property for the unexpired term of the lease. Such a purchaser will pay for that interest what it is worth, and since it belongs to the lessee, it is taxable to him at that value whether or not he has assumed rental or other obligations that will prevent his realizing any return to himself. ''The present owner may have invested well or poorly, may have contracted to pay very high rent or very low rent, and may have built expensive improvements or none at all. To value the property by capitalizing his anticipated net earnings would make the value of property equal to the present value of his profits; since, however, the legislative standard is 'full cash value,' it is

clear that whatever may be the rationale of the property tax, it is not the profitableness of property to its present owner. If a purchaser would buy a given property on an open market, the property has a value equal to the price such purchaser might be expected to pay.'' (*DeLuz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 566 [290 P.2d 544].)

■ Taxation of property at its value without regard to the owner's equity therein is an established principle of ad valorem taxation. ■ Thus, a conditional vendee or a mortgagor is taxable at the full value of property as its owner even though he could realize little or nothing by its sale. (*S.R.A., Inc.* v. *Minnesota,* 327 U.S. 558, 569-570 [66 S.Ct. 749, 90 L.Ed. 851]; *Eisley* v. *Mohan,* 31 Cal.2d 637, 643 [192 P.2d 5]; *DeLuz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 573 [290 P.2d 544].) ■ The continued enjoyment of the benefits of ownership of the fee or a possessory interest is dependent on discharging the obligations assumed to secure such benefits, and there is no logical basis for treating those obligations differently as they happen to run to a lessor, a conditional vendor, or a mortgagee.

■ The distinction between the value of the lessee's possessory interest and his equity therein demonstrates why the value of that interest is not the same as the damages the lessee would receive if it were taken by eminent domain. In eminent domain the full value of the interest must be paid for, but since the taking discharges the obligation to pay future rent, the value of that obligation to the lessor must be awarded to him. (*City of Pasadena* v. *Porter,* 201 Cal. 381, 387 [257 P. 526, 53 A.L.R. 679].) Although the lessee is awarded damages equal only to the value of his equity, he receives the full value of his possessory interest, for his obligation to pay rent is discharged.

■ It would be anomalous to hold that a possessory interest has no value merely because the lessee has agreed to pay what it is worth. As we pointed out in the DeLuz case, the value of a long-term possessory interest may approach the value of the fee (45 Cal.2d at 570), and even in the case of land that does not depreciate in value, the present value of a reversion that cannot be enjoyed for many years may be small compared to the present value of the use in the interim. Thus, the value of the right to use the land in perpetuity may be little greater than the value of the right to use it for the duration of a long-term lease, and in such a case a purchaser of the fee of unleased land would pay or agree to pay little

more than a lessee would for a long-term lease. We would trifle with reality to hold that nevertheless the lessee received nothing of value whereas the purchaser received the full value of the fee.

Plaintiffs contend, however, that unless rent is deducted in computing the net income for valuation purposes, an unconstitutional tax on the city's tax-exempt interest will be imposed. (Const. art. XIII, § 1.) They point out that the land is tax exempt regardless of how it is used and that therefore the city's exemption is not lost because it uses its land by leasing it to private parties. If its lessees, however, unlike lessees of privately-owned land, must pay taxes on their possessory interests in addition to rent equal to the full rental value, the city will necessarily have to reduce its rents by the amount of such taxes to compete with private lessors. Accordingly, plaintiffs conclude that to value leaseholds without making a deduction for rent will result in imposing a tax on the city's right to use its land by leasing it.

When the city leases its land, however, it does not merely use it. It creates valuable privately-held possessory interests, and there is no reason why the owners of such interests should not pay taxes on them just as lessees of private property do through increased rents. Their use is not public, but private, and as such should carry its share of the tax burden. Moreover, the city does not lose its tax exemption by leasing its land. The reversion is not taxed, for it is only the value of the use for the unexpired term of the lease that is assessed. Thus, whereas lessees of private property indirectly pay taxes through increased rent on the full value of the land including the lessor's reversion, the city's lessees pay taxes only on the value of the possessory interests granted to them by the city. The city retains the full benefit of its tax exemption on the interest it has retained. The city is not afforded a competitive advantage over private owners when it sells the fee, for the land is taxable to its new private owner whatever its source. Similarly, the city is not entitled to a competitive advantage over private lessors when it sells lesser interests carved out of the public domain. Of course the city would be able to charge higher rents if it could extend the mantle of its tax exemption over the private interests it creates in its lands, but since it is only its own property that is tax exempt, it is not entitled to that advantage. Since the tax is on the private interest alone, it is immaterial that the denial of that competitive advantage might

be an economic burden on the city. (*General Dynamics Corp. v. County of Los Angeles,* 51 Cal.2d at pp. 59, 63 [330 P.2d 794], and cases cited.)

Plaintiffs contend that since the DeLuz case overruled the Blinn case, it should be given prospective effect only and should not be applied in valuing leaseholds created before it was decided. They rely on *County of Los Angeles v. Faus,* 48 Cal.2d 672, 681 [312 P.2d 680], decided after the DeLuz case, in which the court stated that "where a constitutional provision or statute has received a given construction by a court of last resort and contracts have been made or property rights acquired under and in accordance with its decision, such contracts will not be invalidated nor will vested rights acquired under the decision be impaired by a change of construction adopted in a subsequent decision. Under those circumstances it has been the rule to give prospective, and not retrospective, effect to the later decision."

The rule of the Faus case is not applicable here, for recognition of the correct rule of valuation of possessory interests for tax purposes neither invalidates the leases nor impairs vested rights. Thus we did not apply the Faus rule in the DeLuz case, although it had been recognized in earlier cases. (See *People v. Ryan,* 152 Cal. 364, 369 [92 P. 853]; *People v. Maughs,* 149 Cal. 253, 263 [86 P. 187].) Moreover, in these cases the taxes did not become due before the DeLuz case was decided, defendants are not seeking to collect additional taxes for years prior to that decision, and there is no machinery by which they could do so. The assessor has applied the DeLuz rule in these cases only to taxes on existing interests falling due after the date of that decision. In no proper sense may such application be considered retroactive.

Although those who acquire property or make contracts in reliance of the existing tax laws may be disappointed in their economic expectations when those laws are changed, they acquire no vested right that such changes shall not be made. Taxes on existing interests are not immutable, for within constitutional limits the Legislature has full freedom to change them. Surely an erroneous interpretation of a tax statute cannot be more immutable than the statute itself, and if the court failed to give effect to the correction of its own error, it would defeat the legislative purpose not only as to the past but for the indefinite future.

Cases cited by plaintiffs giving prospective effect to tax decisions are fully in accord with our conclusion herein. Al-

though in some of them the court applied the new rule only to taxes falling due after the date of the decision (*Button* v. *Drake*, 302 Ky. 517 [195 S.W.2d 66, 70, 167 A.L.R. 1046]; *German Gymnastic Assn.* v. *City of Louisville*, 306 Ky. 810 [209 S.W.2d 75, 76]; *Oklahoma County* v. *Queen City Lodge No. 197, I.O.O.F.*, 195 Okla. 131 [156 P.2d 340, 358]; *Board of Equalization* v. *Tulsa Pythian, etc. Assn.*, 195 Okla. 458 [158 P.2d 904, 906]; *Mercantile Nat. Bank* v. *Lander*, 109 F. 21, 25-26; *Libby, McNeill & Libby* v. *Wisconsin Dept. of Tax.*, 260 Wis. 551 [51 N.W.2d 796, 799-800]; *Arizona State Tax Com.* v. *Ensign*, 75 Ariz. 376 [257 P.2d 392, 393]; *Franklin County Court* v. *Louisville & Nash. R. R. Co.*, 84 Ky. 59, 64-65), in others the court applied the new rule to determine the tax liability then in litigation but pointed out that it would not apply to taxpayers whose past liability had been determined without litigation in reliance on the over-ruled decision. (*Duhame* v. *State Tax Com.*, 65 Ariz. 268 [179 P.2d 252, 259-260, 261-262, 171 A.L.R. 684]; *Yarbrough* v. *Oklahoma Tax. Com.*, 200 Okla. 402 [193 P.2d 1017, 1021]; see also *Swank* v. *Tyndall*, 226 Ind. 204 [78 N.E.2d 535, 543].) In none of the cases does it appear that the new rule was not to apply to taxes thereafter falling due on existing property, and in several it appears expressly that it was. (*German Gymnastic Assn.* v. *City of Louisville*, 306 Ky. 810 [209 S.W.2d 75, 76]; *Oklahoma County* v. *Queen City Lodge No. 197, I.O.O.F.*, 195 Okla. 131 [156 P.2d 340, 358]; *Board of Equalization* v. *Tulsa Pythian, etc. Assn.*, 195 Okla. 458 [158 P.2d 904, 906].)

In 1957 the Legislature added section 107.1* to the Revenue

---

*Section 107.1 of the Revenue and Taxation Code provides:

''A possessory interest, when arising out of a lease of exempt property, consists of the lessee's interest under such lease and is hereby declared to be personal property within the meaning of section 14 of Article XIII of the Constitution of the State of California.

''The full cash value of such possessory interest is the excess, if any, of the value of the lease on the open market, as determined by the formula contained in the case of *DeLuz Homes, Inc.* v. *County of San Diego* (1955), 45 Cal.2d 546 [290 P.2d 544], over the present worth of the rentals under said lease for the unexpired term thereof.

''A possessory interest taxable under the provisions of this section shall be assessed to the lessee on the same basis or percentage of valuation employed as to other tangible property on the same roll.

''This section applies only to possessory interests created prior to the date on which the decision of the California Supreme Court in *DeLuz Homes, Inc.* v. *County of San Diego* (1955), 45 Cal.2d 546, became final. It does not, however, apply to any of such interests created prior to that date that thereafter have been, or may hereafter be, extended or renewed,

and Taxation Code. It provides that the "full cash value" of possessory interests created before the decision in the DeLuz case shall be determined by the formula adopted in that case less "the present worth of the rentals under said lease for the unexpired term thereof." Although the taxes involved in these cases became due before the effective date of section 107.1, plaintiffs contend that the section constitutes curative legislation and should therefore be given retrospective effect. Defendants contend that the section is unconstitutional and that, in any event, it cannot be given retrospective effect.

■ The constitutionality of section 107.1 is directly involved in a case now pending in the District Court of Appeal, Second Appellate District. For the purposes of the present case we may assume without deciding that the statute is constitutional. Since the taxes became due before the section became effective, it cannot be given retrospective effect, for to do so would authorize an unconstitutional gift of public funds. (Const., art. IV, § 31; *Estate of Skinker*, 47 Cal.2d 290, 296 [303 P.2d 745]; *Estate of Potter*, 188 Cal. 55, 60 [204 P. 826]; *Estate of Rossi*, 169 Cal. 148, 149 [146 P. 430]; *Estate of Martin*, 153 Cal. 225, 228 [94 P. 1053]; *Trippet* v. *State*, 149 Cal. 521, 528 [86 P. 1084, 8 L.R.A.N.S. 1210]; *Estate of Stanford*, 126 Cal. 112, 118-121 [54 P. 259, 58 P. 462, 45 L.R.A. 788]; *Doctors General Hospital* v. *County of Santa Clara*, 150 Cal.App.2d 53, 55-57 [309 P.2d 501].) *Allen* v. *Franchise Tax Board*, 39 Cal.2d 109 [245 P.2d 297], and *Gartner* v. *Roth*, 26 Cal.2d 184 [157 P.2d 361], are not to the contrary. The Allen case involved a change in the income tax law that became effective before the state's right to the tax vested, and the Gartner case involved not a change in tax liability but a change in the law governing the right to redeem property deeded to the state for nonpayment of taxes.

The judgments are affirmed.

Gibson, C. J., Shenk, J., Spence, J., and Peters, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgments for the reasons stated by Mr. Justice Ashburn in the opinion

irrespective of whether the renewal or extension is provided for in the instrument creating the interest.

"This section does not apply to leasehold estates for the production of gas, petroleum and other hydrocarbon substances from beneath the surface of the earth, and other rights relating to such substances which constitute incorporeal hereditaments or profits a prendre."

prepared by him for the District Court of Appeal in *Texas Co.* v. *County of Los Angeles* and *Forster Shipbuilding Co.* v. *County of Los Angeles,* (Cal.App.) 333 P.2d 97.

Appellants' petitions for a rehearing were denied May 20, 1959. McComb, J., was of the opinion that the petitions should be granted.