[Civ. No. 48117. Second Dist., Div. One. Mar. 15, 1977.]

ATLANTIC RICHFIELD COMPANY et al.,
Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

ATLANTIC RICHFIELD COMPANY et al.,
Plaintiffs and Appellants, v.
CITY OF LONG BEACH, Defendant and Respondent.

ATLANTIC RICHFIELD COMPANY et al.,
Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Hanna & Morton, Harold C. Morton, Edward S. Renwick and Michael C. Mitchell for Plaintiffs and Appellants.

John H. Larson, County Counsel, DeWitt W. Clinton and Dixon M. Holston, Deputy County Counsel, Keil & Connolly, George A. Connolly, Guilfoyle & Dole, Richard F. Dole, Hill, Farrer & Burrill, Vincent C. Page, Jack R. White, Leonard Putnam, City Attorney, and Kenneth K. Williams, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**THOMPSON, J.**—Revenue and Taxation Code sections 107.2 and 107.3 were enacted in 1967. Those sections were adopted to mitigate hardship which the Legislature anticipated might result from the decision in *Atlantic Oil Co.* v. *County of Los Angeles* (1968) 69 Cal.2d 585 [72 Cal.Rptr. 886, 446 P.2d 1006] pending in the Court of Appeal in 1967. Sections 107.2 and 107.3 declare that any result of the litigation eliminating the taxpayer's right to exclude royalties in valuing possessory interests in oil and gas leases shall be prospective in operation in the sense that the new method of valuation shall be applicable only to leases entered into after the tax year in which the litigation commenced. Finding on the basis of evidence presented to it that the legislation was not necessary to alleviate hardship, the trial court held sections 107.2 and 107.3 violative of the assessment at full value requirement of California Constitution, article XIII, section 1 (a consolidation, for purposes here relevant, of former art. XIII, §§ 1 and 37). This appeal tests the validity of the trial court determination.

Bound by the interaction of *Texas Co.* v. *County of Los Angeles* (1959) 52 Cal.2d 55 [338 P.2d 440] and *Forster Shipbldg. Co.* v. *County of L.A.* (1960) 54 Cal.2d 450 [6 Cal.Rptr. 24, 353 P.2d 736] which, in closely parallel situations, uphold the legislative power despite an earlier judicial determination of retroactivity, we conclude that Revenue and Taxation Code sections 107.2 and 107.3 are valid. Accordingly, we reverse the judgment of the trial court.

We reach our conclusion by a distillation of California Supreme Court case law which establishes: (1) in dealing with the provisions of the

California Constitution mandating assessment of property at full value, the Legislature has the power to declare that a change in interpretation of the scope of the constitutional mandate shall be prospective in operation;[1] (2) the legislative exercise of the power is subject to judicial review only for "reasonableness"; and (3) "reasonableness" in this context is tested by the existence of a basis for legislative action and is not the subject of de novo judicial determination.

### *Assessment at "Full Value"—Possessory Interests*

Article XIII, section 1 of the California Constitution states: "Unless otherwise provided by this Constitution or the laws of the United States: [¶] (a) All property is taxable and shall be assessed at the same percentage of fair market value. . . . [¶] (b) All property so assessed shall be taxed in proportion to its full value."

Real property is included within the definition of that which is taxable pursuant to article XIII, section 1. (Rev. & Tax. Code, § 103.) Where the fee interest in real property is vested in a governmental or other tax exempt entity and the right to possession is held by a non-tax exempt person, there is a special problem. Then the taxable property is the possessory interest and not the tangible real estate. (5 Witkin, Summary of Cal. Law, Taxation, §§ 99, 106.)

Valuation of possessory interest in a manner compatible with the assessment at full value requirement of article XIII, section 1 of the California Constitution has presented a set of troublesome problems.

### *The 1955 Judicially Mandated Change in*
### *Method of Valuation of Possessory Interests—*
### *Prospective or Retrospective Application*

Until 1955, possessory leasehold interests were valued by first determining the value of the term and then deducting the present value of capitalized annual future rental and amortization of improvements to ascertain the current value of the leasehold interest. (*Blinn Lbr. Co.* v. *County of Los Angeles* (1932) 216 Cal. 474, 482 [14 P.2d 512, 84 A.L.R. 1304], approving *Hammond L. Co.* v. *County of Los Angeles* (1930) 104 Cal.App. 235, 244-246 [285 P. 896].) In *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 570 [290 P.2d 544], our Supreme Court

---

[1] We do not consider the extent of the legislative power in other situations.

disapproved the manner of valuation of possessory interests previously accepted by it as proper. It held that the lessor's cost for rent and amortization of improvements was in effect a cost of acquisition of property which could not be deducted as part of a formula of valuation. (*Id.,* at pp. 567-568; see also *Victor Valley* v. *County of San Bernardino* (1955) 45 Cal.2d 580 [290 P.2d 565]; *El Toro Dev. Co.* v. *County of Orange* (1955) 45 Cal.2d 586 [290 P.2d 569].)

In *Texas Co.* v. *County of Los Angeles, supra,* 52 Cal.2d 55, 64, the high court considered a contention that *De Luz* should apply only to possessory interests acquired after the date of the decision. The taxpayers in *Texas Co.* argued that because *De Luz* overturned a principle previously adopted by the high court in *Blinn* upon which persons who had acquired property rights in possessory interests had-relied, the rule of *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 681 [312 P.2d 680], dictated prospective application of *De Luz.*

The Supreme Court rejected the taxpayers' argument. It said: "The rule of the Faus case is not applicable here, for recognition of the correct rule of valuation of possessory interests for tax purposes neither invalidates the leases nor impairs vested rights. Thus we did not apply the Faus rule in the De Luz case, although it had been recognized in earlier cases. [Citations.] . . . Although those who acquire property or make contracts in reliance of [*sic*] the existing tax laws may be disappointed in their economic expectations when those laws are changed, they acquire no vested right that such changes shall not be made. Taxes on existing interests are not immutable, for within constitutional limits the Legislature has full freedom to change them. Surely an erroneous interpretation of a tax statute cannot be more immutable than the statute itself, and if the court failed to give effect to the correction of its own error, it would defeat the legislative purpose not only as to the past but for the indefinite future." (52 Cal.2d at p. 64.)

In 1957, while *Texas Co.* was pending, the Legislature enacted Revenue and Taxation Code section 107.1. That statute ventures where the Supreme Court in *Texas Co.* refused to tread. Section 107.1 (amended by Stats. 1970) limits the *De Luz* rule to prospective application by providing that "The full cash value of a possessory interest, when arising out of a lease of exempt property, is the excess, if any, of the value of the lease on the open market, as determined by the formula contained in the case of De Luz Homes, Inc. v. County of San

Diego . . . *over the present worth of the rentals under said lease for the unexpired term thereof.* . . . [¶] This section applies only to possessory interests created prior to the date on which the decision of the California Supreme Court in De Luz . . . became final. It does not . . . apply to any of such interests created prior to that date that thereafter have been, or may hereafter be, extended or renewed . . . ." (Italics added.)

The County of Los Angeles challenged the constitutionality of section 107.1. Faced with the challenge, the Supreme Court, in *Forster Shipbldg. Co.* v. *County of L.A., supra,* 54 Cal.2d 450, stated, in contrast to its language in *Texas Co.*: "Section 107.1 partially reinstates the rule of the Blinn case as the method for assessing and taxing interests created in reliance on that rule, while preserving the rule of the De Luz case for all other interests. The sole purpose of the section is to mitigate the economic burdens imposed on lessees of tax-exempt property when this court overruled the Blinn case. . . . [¶] In recent years much attention has been given to the problem of mitigating the hardships caused by an overruling of established law. [Citations.] . . . In most jurisdictions . . . courts have established exceptions to the general rule of retroactivity [of decisional law] to protect those who acted in reliance on the overruled decision. [Citation.] . . . [¶] We have hitherto recognized that the California Constitution permits an appellate court to apply an overruling decision prospectively only, even though it thereby temporarily preserves and applies a mistaken interpretation of the Constitution. (*County of Los Angeles* v. *Faus,* 48 Cal.2d 672 . . . .) The constitutional requirements of assessment and taxation at full cash value and in proportion to value are no less flexible in this respect than other constitutional provisions. Neither provision precludes the temporary and limited application of a rule once approved by this court, if reasonably designed to mitigate hardships caused by our subsequent rejection of the rule. *Such temporary application of the rule of an overruled case may be prescribed by appropriate legislation as well as by judicial decision, for the Legislature is no less competent than the court to evaluate the hardships involved and decide whether considerations of fairness and public policy warrant the granting of relief.*" (54 Cal.2d at pp. 458-459; italics added.)

Concluding that "[s]ection 107.1 is not an unreasonable exercise of the Legislature's power to mitigate hardships caused by the overruling of established law" because "leases of tax-exempt property created before the De Luz case were fixed at a level competitive with rentals of private property on the assumption that the rental value of the possessory

interest would not be taxed" (54 Cal.2d at pp. 459-460), the high court holds the section constitutional. (54 Cal.2d at p. 460.) Particularly significant to the scope of the decision in *Forster* is the fact that Forster Shipbuilding Company, Inc., the prevailing taxpayer in *Forster,* was one of the losing taxpayers in *Texas Co.* (52 Cal.2d 55.)

### Possessory Interests in Oil and Gas Properties

Revenue and Taxation Code section 107.1 is expressly inapplicable to oil and gas leases.[2] However, before 1963, assessors in California assessed the oil lessee-possessory interest in property leased from a tax exempt lessor by estimating the present value of recoverable hydrocarbons and deducting from that value the estimated present value of the costs of recovery and the estimated present value of the sums payable by the lessee to the lessor in money or in kind. (*Atlantic Oil Co.* v. *County of Los Angeles, supra,* 69 Cal.2d 585, 592 [Arco I].)

Commencing with the 1963-1964 tax year, assessors changed the method of valuation of oil and gas possessory interests by no longer deducting from the estimated present value of recoverable hydrocarbons the estimated present value of payments due from the lessee to the lessor. Atlantic Richfield Company and Humble Oil & Refining Company filed actions in the superior court challenging the newly adopted method of valuation. The superior court sustained the new method of assessment, with an exception not here material, and the cases commenced their travel through the appellate process. (*Id.,* at p. 593.)

Relying principally on Revenue and Taxation Code section 107 (subd. (b)), which defines "possessory interests" and also states that profits a prendre and incorporeal hereditaments in connection with oil and gas leases are not possessory interests "but shall be placed upon the secured roll," the taxpayers argued in Arco I that while they were properly taxed on the value of the profit a prendre, the right to remove oil and gas, the incorporeal hereditament, the right to receive payments from the lessor in money or kind, was the property of the tax exempt entity and hence immune from taxation. Thus the taxpayers claimed that an oil and gas lease was not subject to the *De Luz* formula. (69 Cal.2d at pp. 597-598.)

---

[2]"This section does not apply to leasehold estates for the production of gas, petroleum and other hydrocarbon substances from beneath the surface of the earth, and other rights relating to such substances which constitute incorporeal hereditaments or profits a prendre."

While the Arco I appeal was pending, the Legislature in 1967 enacted sections 107.2 and 107.3 of the Revenue and Taxation Code. Both sections specify that the method of valuation of oil and gas possessory interests administratively adopted by assessors and used prior to 1963 is the correct mode. Section 107.2 is limited in its scope to "oil and gas interests created prior to the date on which the decision in De Luz Homes, Inc. v. County of San Diego . . . became final." Section 107.3 covers oil and gas interests created "on or before July 26, 1963." Both sections exclude otherwise covered leases extended or renewed after the cut-off date.

Statutes 1967, chapter 1684, the legislative enactment of Revenue and Taxation Code sections 107.2 and 107.3 states, in part: ". . . nothing in this act shall be construed to affect the litigation now pending in several counties concerning the valuation, assessment and taxation of oil and gas interests in exempt property for assessment years prior to the 1967-1968 assessment year or the rules of law applicable to such litigation." (§ 3.)

Statutes 1967, chapter 1684, states, also: "The Legislature finds and declares that prior to 1963 all assessors in California uniformly excluded or deducted the value of government-owned royalty or similar interests when assessing privately owned oil and gas interests in government lands. In 1963 certain assessors reversed this long-standing uniform method of assessment and such oil and gas interests are now generally assessed without such exclusion or deduction. This unexpected change has resulted in severe hardship similar to the hardship suffered by lessees of the surface of government land as a result of the decision in De Luz Homes, Inc. . . . In 1957 the Legislature relieved the surface lessees from such hardship by the enactment of Section 107.1 of the Revenue and Taxation Code, but excluded oil and gas interests from such relief because the Legislature, consistent with the understanding of the oil industry, the state and the assessors, believed that the rule of the De Luz Homes case was not applicable to oil and gas interests. Now that assessors have changed their prior method of assessment, the Legislature finds, declares and intends that similar relief should be extended to oil and gas interests by this act." (§ 4.)

In substance, the Legislature thus applied to oil and gas possessory interests the same general principle of prospective operation of changed manner of valuation which it had previously adopted in the situation of other possessory interests in Revenue and Taxation Code section 107.1.

In 1968, our Supreme Court decided the cases pending when Revenue and Taxation Code sections 107.2 and 107.3 were enacted. In *Atlantic Oil Co. v. County of Los Angeles, supra,* 69 Cal.2d 585, it held that the incorporeal hereditament, the right to receive royalties, held by the exempt lessor was not an interest in realty but rather was inseparable for the purpose of ad valorem taxation from the profit a prendre which constituted the taxpayer's possessory interest. (69 Cal.2d at p. 599.) Accordingly, the high court applied the *De Luz* rule to possessory interests in oil and gas. (69 Cal.2d at pp. 599-601.)

### The Case at Bench

At last we reach the reprise of *Texas Co.-Forster* which is the case at bench.

Taxpayer-plaintiffs were assessed continuously from the 1963-1964 tax year by the changed method administratively adopted in that year. The method was applied to oil and gas interests acquired prior to July 26, 1963, and not extended or renewed. Having exhausted their administrative remedies, plaintiffs paid the tax under protest and sued for refunds. The defendant-taxing entities resisted the suit on the ground that Revenue and Taxation Code sections 107.2 and 107.3 are an unconstitutional legislative effort to permit the assessment of property at less than the full value mandated by article XIII, section 1 of the California Constitution.

The trial court examined the facts independently of the legislative findings supporting sections 107.2 and 107.3. Relying upon judicially noticeable evidence that the oil and gas leases in question could be surrendered by the lessee at its option, that most of the leases permitted renegotiation of royalty bilaterally, and that most of them involved royalties determined by means other than bidding or negotiation, the trial court found that no hardship was suffered by taxpayers as a result of the 1963 change in assessment practice. It found also that the change was not the result of court decision, and that taxpayers had not relied upon pre-1963 decisional law in entering into the leases. Accordingly, the trial court concluded that there was no basis for the Legislature's determination to make the 1963 change in assessment method prospective and that, therefore, sections 107.2 and 107.3 are an unconstitutional infringement of the full value requirement of article XIII, section 1 of the California Constitution.

## Trial Court's Error

The trial court erred in testing the predicate for the legislative enactment of the statutes by the court's own interpretation of facts rather than by the reasonableness of the enactment in light of the situation presented to the Legislature.

*Forster Shipbldg. Co.* v. *County of L.A., supra,* 54 Cal.2d 450, dictates that ". . . the Legislature is no less competent than the court to evaluate the hardships . . . and decide whether considerations of fairness and public policy warrant [a determination to make a newly adopted rule of assessment prospective in operation only]." (54 Cal.2d at p. 459; for an example of a contrary view, see *Davis* v. *General Motors Acceptance Corporation* (1964) 176 Neb. 865 [127 N.W.2d 907].) The legislative action cannot be second-guessed by the judicial branch so long as it "is not an unreasonable exercise of the . . . power to mitigate hardships caused by the overruling of established law." (54 Cal.2d at p. 459.)

Interaction of *Forster* and *Texas Co.* v. *County of Los Angeles, supra,* 52 Cal.2d 55, establishes that reasonableness of legislative action is not determinable by a record made after the fact in the trial court. It is measurable only by the predicate for action in the Legislature itself. In *Texas Co.,* the Supreme Court unequivocally concluded that the rule of *De Luz* did not create a hardship justifying prospective operation. Accordingly, the high court held the rule applicable to pre-*De Luz* leases. (52 Cal.2d at p. 64.) The same taxpayer and taxing entity relitigated the issue in *Forster,* decided after the legislative determination of prospectivity. Despite its earlier decision, the high court held in *Forster* that the legislative determination of hardship, made while *Texas Co.* was pending (52 Cal.2d at pp. 65-66), was binding so that the *De Luz* rule was prospective in operation. Thus, the California Supreme Court accepted a legislative determination of hardship justifying prospective application of the rule of taxation although the high court itself had found that no hardship existed. The high court's action establishes the Legislature's power to determine the predicate for prospectivity. It establishes, also, that while the Legislature must act reasonably, reasonableness is not rebutted by a judicial determination of the lack of hardship.

Here we cannot say that the Legislature acted unreasonably in providing that the changed method of valuation of possessory interests in

oil and gas leases is inapplicable to those interests created on or before July 26, 1963. Private oil and gas leases generally contain a tax proration clause allocating property taxes between lessor and lessee. The pre-1963 leases with tax exempt lessors did not.[3] A substantial number, although small proportion, of the pre-1963 leases were the result of competitive bidding in which the manner of taxation of the lessee's interests was undoubtedly a factor. While the trial court looked only to the after-the-fact probability of income from producing leases, the Legislature could reasonably have taken the wildcatter's viewpoint and considered also the drilling and other development costs that had been expended by lessees after evaluating risk against potential income in light of a return based upon the pre-1963 method of taxation.

We thus conclude that the record of the case at bench satisfies *Forster's* requirement of reasonableness of the Legislature's determination that a change in manner of valuation of property for tax purposes be prospective in operation. There remains only the issue of whether such a determination is permissible where the prior method was not expressly approved by court decision and the determination of prospective operation anticipates high court action validating the change.

The legislative action is permissible in the context of the case at bench. The pre-1963 method of taxation of possessory interests in oil and gas properties was arguably correct by reason of Revenue and Taxation Code section 107 (see also Rev. & Tax. Code, § 104). Reliance upon a statute as administratively construed is no less justified than reliance upon decisional law. When the method was challenged by the change in administrative practice which was tested in Arco I, the Legislature was alerted to the possibility of hardship which triggered its consideration of the adoption of a rule of prospective operation should the challenge be successful. The Legislature was not required to wait until Arco I completed its course through the appellate process but could act to meet the contingency that the case would be decided as it was.

In sum, the action of the Legislature in enacting Revenue and Taxation Code sections 107.2 and 107.3 parallels its earlier action in enacting section 107.1. The case at bench parallels *Forster. Forster*

---

[3]While generally federal law precludes tax proration clauses in leases of the type here pertinent, the Legislature could nevertheless conclude that a person contemplating acquiring such a lease could consider the interaction of the absence of the clause and the pre-1963 administrative determination.

mandates that we reverse the trial court's determination that sections 107.2 and 107.3 are unconstitutional.

### Disposition

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied April 13, 1977, and the petition of all the respondents for a hearing by the Supreme Court was denied June 2, 1977.