[No. A028473. First Dist., Div. One. Feb. 3, 1986.]

SHERMAN LEWIS et al., Plaintiffs and Appellants, v.
CITY OF HAYWARD, Defendant and Respondent;
Y. CHARLES SODA et al., Real Parties in Interest and Respondents.

## COUNSEL

Zach Cowan for Plaintiffs and Appellants.

Stephan C. Volker, Lee Ehmke and Claudia W. Brisson as Amici Curiae on behalf of Plaintiffs and Appellants.

Alice C. Graff, City Attorney, Valerie J. Armento and J. Matthew Rodriguez, Deputy City Attorneys, for Defendant and Respondent.

Marlene A. Fox, Dirk Van Tatenhove, Jeffrey P. Widman, Les A. Hausrath, Wendel, Lawlor, Rosen & Black, Barrie Engel and Hardin, Cook, Loper, Engel & Bergez for Real Parties in Interest and Respondents.

## OPINION

**NEWSOM, J.**—The instant appeal involves a challenge to the constitutionality of former Government Code section 51282.1, the so-called "window"

period cancellation provision, a part of the 1982 amendments to the Williamson Act. (Gov. Code, § 51200 et seq. § 51282.1 was repealed by its own terms on Jan. 1, 1983.) The window provision allowed owners of land subject to Williamson Act contracts, which restricted the land to agricultural uses, a one-time opportunity to cancel the contracts. Enacted in response to the decision of our high court in *Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840 [171 Cal.Rptr. 619, 623 P.2d 180], the window provision's express purpose was to "correct inconsistent applications" of the cancellation provisions of the Williamson Act.

In relevant part the factual and procedural background may be summarized as follows.

Sherman Lewis, a resident of the City of Hayward (hereafter the City), together with three nonprofit corporations motivated by environmental and local planning concerns, filed a complaint for declaratory and injunctive relief challenging the facial constitutionality of the window cancellation provision against the City of Hayward and two groups of landowners on November 16, 1982.

On November 14, 1983, the developers, Hayward 1900, Inc., and Cal Pac Land Improvement, filed a motion for summary judgment, seeking a determination that the window statute is constitutional.[1] Lewis filed a cross-motion contending that the window provision is not a valid hardship statute, that its purpose is not permissible under article XIII, section 8 of the California Constitution, and that the ease of cancellation renders its alleged restrictions illusory, thus violating section 8.

In a memorandum of decision filed April 27, 1984, the trial court granted Cal Pac's motion and denied plaintiffs' motion. The court found specifically that the window provision *on its face* does not conflict with article XIII, section 8, of the Constitution because the Legislature has the exclusive power to determine the manner of an enforceable restriction. Judgment was entered against plaintiffs on all causes of action on June 8, 1984, and this appeal followed.

Real parties in interest own properties in the City of Hayward on Walpert Ridge and in the Fairview Loop area, which are contiguous to several thousand acres of open space and agricultural ridgelands above the City. The property has been restricted to agricultural use since 1969, pursuant to contracts between the City and the owners as specified in the Williamson Act.

---

[1]Defendant Ponderosa Homes also filed a motion for summary judgment arguing that Lewis failed to exhaust administrative remedies which was denied.

(See *Sierra Club* v. *City of Hayward, supra,* 28 Cal.3d at p. 847.) In January of 1978, some of the owners petitioned the City for cancellation of their contracts and requested a zoning change from "agricultural" to "planned development" to allow Ponderosa Homes to build a residential subdivision. However, the city council's subsequent cancellation of the contract was vacated by the Supreme Court's decision in *Sierra Club* v. *City of Hayward, supra,* 28 Cal.3d 840. Subsequent to the passage of Assembly Bill No. 2074, the legislative response to *Sierra Club,* the landowners herein applied to the City for "window" cancellation of their contracts.

Concern with "premature and unnecessary conversion of agricultural land to urban uses" and the discouragement of "discontiguous urban development patterns which unnecessarily increase the costs of community services to community residents" prompted the Legislature in 1965 to enact the California Land Conservation Act, also known as the Williamson Act. (Gov. Code, §§ 51200-51220.)

As described by our high court, one cause of the premature development of agricultural land is the structure of the property tax system. (*Sierra Club* v. *City of Hayward, supra,* 28 Cal.3d at p. 850.) As development draws closer to the boundaries of agricultural land, the assessor is forced to consider the growing likelihood of a future developed use of the property. Thus, the tax value of land increases as development approaches. This situation can cause property taxes to exceed the income derived from agricultural use and lead to premature sales and development. (*Ibid.*)

The Williamson Act attempts to combat the obstacles to preserving California's agricultural land by authorizing cities and counties to enter into restrictive contracts with property owners to limit the use of the land to agriculture for terms of no less than 10 years. (Gov. Code, §§ 51240, 51244.) Contractual restrictions were employed because zoning had proved to be an ineffective method of enforceably restricting land use given the ease with which zoning could be changed, a fact reflected in assessment practices. (See, e.g., *Dorcich* v. *Johnson* (1980) 110 Cal.App.3d 487, 492 [167 Cal.Rptr. 897].) For example, even property which was zoned "agricultural" could be taxed at a higher rate if the zoning of surrounding property was changed from agricultural to residential. (See, e.g., 30 Ops.Cal.Atty.Gen. 246 (1957).)

The appeal of the Williamson Act contracts was that former Revenue and Taxation Code section 402.6 (currently contained in § 402.1) provided that the assessor could consider only the restricted use value so long as removal or modification of the restriction was not reasonably probable. (*Dorcich* v. *Johnson, supra,* 110 Cal.App.3d at p. 493.) The Attorney General subse-

quently opined that an assessor when valuing agricultural property would continue to have the power to exercise judgment as to whether Williamson Act restrictions were likely to be removed. Explaining that article XIII, section 1, and article XI, section 12 of the Constitution mandated the inclusion of such considerations in the appraisal of Williamson Act lands, the Attorney General's opinion raised grave doubt concerning the utility of the statutory contracts. (47 Ops.Cal.Atty.Gen. 171, 178-180 (1966).)

The response to the Attorney General came at the 1966 general election, when the people passed the "breathing space" amendment to the Constitution, requiring assessment at the restricted value of the land. This provision of the Constitution, as presently contained in article XIII, section 8, provides in relevant part: "To promote the conservation, preservation and continued existence of open space lands, the Legislature may define open space land and shall provide that when this land is enforceably restricted, in a manner specified by the Legislature, to recreation, enjoyment of scenic beauty, use or conservation of natural resources, or production of food or fiber, it shall be valued for property tax purposes only on a basis that is consistent with its restrictions and uses."

Subsequent amendments to the Williamson Act resulted in a system of enforceable contracts limiting the use of any agricultural land within government-designated agricultural preserves. (Gov. Code, §§ 51240, 51242.)

Williamson Act contracts have a minimum term of 10 years and are automatically renewed annually for an additional year unless notice of nonrenewal is given by either party to the contract. (Gov. Code, § 51244.) In *Sierra Club* v. *City of Hayward, supra,* 28 Cal.3d 840, the Supreme Court concluded that nonrenewal is the preferred and ordinary method of contract termination. (*Id.,* at p. 852.) A second method, contract cancellation, is also provided for in the act. (Gov. Code, § 51281.) Unlike nonrenewal (which allows the contract to run for the nine remaining years of its term, while taxes are gradually adjusted upward), cancellation, which may only be initiated by the property owner, permits immediate escape from the contract. (Gov. Code, §§ 51245, 51281; Rev. & Tax. Code, § 426.) The act provides for payment of a cancellation fee and partial recapture of the preferential tax. (Gov. Code, §§ 51282, 51283.) The purpose of the latter provisions is to discourage early cancellation of the contracts. (*Dorcich* v. *Johnson, supra,* 110 Cal.App.3d at pp. 496-497.)

In construing the former cancellation provisions, the *Sierra Club* court based its holding on several basic conclusions concerning the purposes of the Williamson Act. The court initially stated that easy cancellation was not only inconsistent with the act, but contrary to section 8 of article XIII of

the Constitution, explaining: "If cancellation were a simple matter of showing that the restricted land is now more valuable for a developed use, we doubt whether Williamson Act contracts could qualify as 'enforceable restrictions' making the land eligible for taxation on use value rather than market value under the Constitution." (*Sierra Club* v. *City of Hayward, supra,* 28 Cal.3d at p. 855.)

Following the *Sierra Club* decision, a flurry of legislative activity ensued. Several bills introduced in the 1981 legislative session were intended to weaken the Supreme Court's strict interpretation of the Williamson Act. Assembly Bill No. 2074 was a compromise bill sponsored by Assemblyman Robinson, the stated purpose of which was "not to weaken or to strengthen the Williamson Act but simply to clarify and make the law workable in light of problems and ambiguities created by . . ." the *Sierra Club* decision. (Stats. 1981, ch. 1095, § 8, p. 4254.)

The Robinson Act incorporated some of the conclusions of the Supreme Court regarding findings required in support of cancellation. (Gov. Code, § 51282.) Additionally, Assembly Bill No. 2074 created a one-time opportunity for landowners to cancel their contracts. This "window" provision, effective only for the year of 1982, allowed cancellation if the City found "[t]hat the cancellation and alternative use will not result in discontiguous patterns of urban development" and that the alternative use was consistent with the City's general plan in effect on October 1, 1981, or amended thereafter in accordance with proceedings formally initiated prior to January 1, 1982. (See Historical Note, 36 West's Ann. Gov. Code (1983 ed.) § 51282.1, pp. 577-578.) We turn now to the issue of which standard of review applies to the present appeal.

In *California Housing Finance Agency* v. *Patitucci* (1978) 22 Cal.3d 171 [148 Cal.Rptr. 875, 583 P.2d 729], our high court opined that the Legislature's construction of a constitutional provision of obscure or doubtful meaning is persuasive and will be affirmed unless "unreasonable or clearly inconsistent with the express language or clear import of the Constitution." (*Id.,* at pp. 175-177.) In *Patitucci,* the Supreme Court considered legislation enacted after the court had construed a statutory definition, and carefully weighed the purpose of the constitutional provision at issue in order to determine that the new definition was reasonable and consistent with the constitutional purpose.

Similarly, this court, while mindful of the wide latitude given the Legislature, must weigh the purposes of the constitutional provisions against the legislative measure to determine whether it is unreasonable or clearly inconsistent with the language or import of article XIII, section 8.

■ As a preliminary matter, the Sierra Club contends that the strict time deadlines of the Permit Streamlining Act (Gov. Code, §§ 65950-65957.1), incorporated into the window provisions by Government Code section 51282.1, subdivision (c), have expired, leaving the City without the power to approve the cancellation applications at issue herein.

The window provision states that "[e]ach city or county shall establish a schedule for acting on the petitions [for cancellation], and all petitions shall be approved or disapproved in accordance with the provisions of section 65950 and following . . . ."[2] (Former Gov. Code, § 51282.1, subd. (c).) Section 65950 provides that an agency must approve or disapprove a petition within one year from the date the application is accepted as complete by the agency. Section 65943, which defines when an application is complete, states that the agency must determine completeness in writing no later than 30 days after receipt or the application is deemed complete. Section 65950 provides that a failure to timely approve or disapprove an application shall be deemed approval of the project. Thus, if the applications at issue were deemed approved 30 days after receipt due to the City's failure to provide a written determination of completeness, the one-year time limitation on processing of the applications has expired. This issue did not arise until after the appeal was pending; thus there was no evidence in the record before the trial court as to whether or not such a written determination was ever made.

The relationship between the Permit Streamlining Act and the Robinson Act's window provision involves issues relating to the power of cities to continue processing window cancellations in the absence of strict compliance with the statutory time limitations. Because this is an issue of public importance, it may be considered for the first time on appeal. (*No. Oil, Inc.* v. *Occidental Petroleum Corp.* (1975) 50 Cal.App.3d 8, 26-27 [123 Cal.Rptr. 589].) We notified the parties we would consider taking judicial notice of the City's public document file to determine whether the City had made a written determination of completeness and whether the time limits of section 65950 had expired.[3] Our examination of the file disclosed that the City failed to make written determinations of completeness as required, and that if the applications were deemed complete 30 days after receipt, the

---

[2]An exception is available for a county to hold a petition without action pending annexation proceedings and transfer it to the annexing city upon completion of annexation proceedings. This exception was applied to the Walpert Ridge applications herein.

[3]Judicial notice of undisputed facts capable of accurate determination is appropriate. (Evid. Code, § 452, subd. (h).) Thus, we look to the City's public file to determine the date upon which the City made a written determination of completeness. Although the City and Ponderosa have disputed the completeness of the City's files, neither party has identified any inaccurate information in the files. Similarly, no party has disputed the accuracy of the dates of receipt of documents filed with the City.

time limits for approving or disapproving the cancellation applications have expired.

Although the City failed to furnish the developers with a formal written determination of completeness, its files demonstrate that it did make repeated piecemeal requests for additional information which resulted in delay in processing the applications. This action on the part of the City made it clear to the developers that the City did not consider the applications complete. No developer insisted on the statutory writing or asked that the application be deemed complete pursuant to Government Code section 65943.

In *Edwards* v. *Steele* (1979) 25 Cal.3d 406 [158 Cal.Rptr. 662, 599 P.2d 1365], our high court stated that even mandatory time limits should not be construed to eliminate rights of a nondefaulting party. (*Id.*, at p. 412.) The record, as supplemented by the City's files, demonstrates that the City did not consider the applications to be complete and that it communicated this fact to the developers, but failed to follow statutory formalities regarding the timing of this communication. Although we do not condone this failure to strictly comply with the statutory requirement, we will not construe a violation of the requirement of a written determination of completeness in a manner which destroys the rights of a party not causing the violation. We proceed, therefore, to consider the constitutional challenge on its merits.

 Appellant's first challenge to the constitutionality of the Robinson Act window provision is based upon the contention that the legislative purpose of allowing easy cancellation of Williamson Act contracts is in conflict with the conservation purposes of article XIII, section 8 of the Constitution.

The developers argue that the case of *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122 [203 Cal.Rptr. 886], is dispositive of the issue of the constitutionality of the Robinson Act. In *Honey Springs,* the court held the evidence insufficient to support findings necessary to approve a window cancellation and so remanded the issue for further proceedings. The Fourth District Court of Appeal determined that the window provisions must be construed narrowly and against cancellation in accordance with the objectives of the Williamson Act and article XIII, section 8 of the Constitution. (*Id.*, at pp. 1138-1139.)

The court also noted that the permanent cancellation provisions required stringent findings and were not "so liberal as to be unconstitutional." In passing, the court stated that the window provisions are also "sufficiently enforceably restrictive to promote the underlying objectives of the Williamson Act, the Constitution and the Robinson Act." (*Honey Springs Homeowners Assn.*, *supra*, at p. 1147.) The decision plainly is based upon the

court's determination that the board of supervisors had not considered sufficient evidence to support the findings necessary to allow cancellation. Just as clearly, the statement regarding the constitutionality of the window provision is dicta.

Respondents contend that the phrase "enforceable restrictions" encompasses any restrictions which have an impact upon value, and argue that the Constitution allows the Legislature to define the terms "enforceably restricted" in any way it chooses. We disagree.

Indeed we find no indication that the constitutional provision permits the Legislature to define enforceable restrictions *at all,* much less to define restrictions which do not actually serve to restrict the use of the land at issue. Although the Constitution directs the Legislature to "define" open space land, it merely allows the Legislature to specify the "manner" in which land is enforceably restricted.[4]

■ Our high court has held that a Williamson Act contract does not meet the constitutional standard if it can be cancelled solely upon a showing that the land is now more valuable for development. (*Sierra Club* v. *City of Hayward, supra,* 28 Cal.3d at p. 855.) The obvious reason for this conclusion is that a restriction to agricultural use, created to control urban development, would have little enforcement value if it could be cancelled whenever development drew near. Thus, even if section 8 allows the Legislature to define restrictions, it does not permit a definition which renders such restrictions ineffective for land conservation purposes. We are of the opinion that to pass constitutional muster, a restriction must be enforceable in the face of imminent urban development, and may not be terminable merely because such development is desirable or profitable to the landowner. ■ If the purpose of the window provision is to allow termination of Williamson Act contracts merely because development is imminent, without concern for the public's interest in the policies underlying article XIII, section 8 of the California Constitution and the Williamson Act, the provision will not survive constitutional scrutiny. (*Ibid.*)[5]

---

[4] The word "manner" as contained in the language "restricted . . . in a manner specified by the Legislature . . ." has the common meaning that the Legislature may prescribe the procedure by which land is restricted. (See, e.g., Webster's Ninth New Collegiate Dict. (1984) p. 724, defining "manner" as "kind, sort . . . a mode of procedure or way of acting . . . .")

[5] The City and Ponderosa argue that the interests of the public are adequately considered when a general plan is adopted (Gov. Code, §§ 65560, 65561) and a review pursuant to the California Environmental Quality Act is undertaken. (Pub. Resources Code, § 21080.) Neither of these statutory schemes involve the same considerations of enforceability as the Williamson Act because they do not provide for tax relief. Long ago, the Legislature determined that a more certain and enforceable method must be used to ensure the restricted use

The stated purpose of section 51282.1 is to correct inconsistent applications of the Williamson Act and thereby alleviate present and potential hardships for cities and counties and landowners. (Gov. Code, § 51282.1, subd. (a).) Respondent maintains that the narrow construction given to the cancellation provisions by the Supreme Court imposed more rigorous requirements on post-*Sierra Club* v. *Hayward* cancellation than prior local practice had required. Thus, the window provisions were enacted to allow landowners who may have relied on lax local practices to escape the effect of the *Sierra Club* decision by obtaining cancellation of their contracts under more relaxed standards. The statute does not require any showing of actual hardship or reliance on prior practice.

The declaration of legislative intent contained in former section 51282.1, as well as the express language of that section, clearly indicate that the purpose of the window provision is to permit contract cancellation on a showing that urban development is contiguous to the restricted parcel and that the general plan allows the proposed development. It is hard to imagine a clearer statement of an intent to provide for the lifting of a restrictive use simply because development is both nearby and otherwise legal. Surely, however, those standards do not comprise effective, enforceable restrictions for land conservation purposes. In our view, therefore, they are inconsistent with the constitutional requirement that preferentially taxed lands be enforceably restricted.[6]

Arguing by analogy to decisions which overrule or invalidate established law, respondents argue that the window provision may stand as a hardship measure regardless of its constitutionality—an assertion rejected by the trial court. Citing *Schettler* v. *County of Santa Clara* (1977) 74 Cal.App.3d 990 [141 Cal.Rptr. 731] and *Atlantic Richfield Co.* v. *County of Los Angeles* (1977) 68 Cal.App.3d 105 [137 Cal.Rptr. 84], respondents argue that the Legislature has merely provided that the *Sierra Club* decision be applied prospectively to eliminate hardship caused by this "unexpected change" in the established law. This "prospective" effect would prohibit the application of *Sierra Club* to window cancellations. *Atlantic Richfield* and *Schettler*, respectively, dealt with the state and federal Supreme Court decisions which

---

of Williamson Act lands. Legislation, which could be changed for purposes other than those underlying article XIII, section 8, was deemed ineffective to restrict these lands. Thus, the public's interest in enforcing private Williamson Act contracts includes elements denying tax relief to speculators as well as considerations of the desirability of open space. (*Sierra Club* v. *City of Hayward, supra,* 28 Cal.3d at p. 852.) It is concern for these interests that is absent from the window provision.

[6]The Sierra Club challenges the constitutionality of Government Code section 51280.1, passed in 1983 after the complaint in this action was filed. This matter was not considered by the trial court. According to the record below, section 51280.1 has not been applied to any cancellation application in this action and we decline to address the issue at this time.

had overruled previously controlling decisions. The effect of the subsequent legislation at issue in those cases was to continue the former rule in effect for those who had detrimentally relied on the prior case law.

The effect of section 51282.1 is not to continue prior law in effect, since no prior law was declared unconstitutional. No prior binding precedent was overruled by *Sierra Club,* as it was the first case to consider the cancellation provisions. Section 51282.1, in announcing an entirely new statement of law, does not direct cities to continue their former lax methods of cancellation, but, by eliminating any consideration of the public's interest in the policies underlying article XIII, section 8, substitutes a standard that may be even less restrictive. Unlike the legislation in *Richfield* and *Schettler,* this statute provides a windfall rather than equitable relief from a change in Supreme Court doctrine.

*Schettler* and *Richfield* stand for the proposition that the Legislature may limit an overruling judicial decision to prospective application to avoid unfairness. Section 51282.1 seeks to suspend the effect of *Sierra Club* for those who petitioned for cancellation in the first five months of 1982, until all window applications are approved. This is not hardship relief intended to be achieved by mandating prospective application of an overruling decision. Even if the Legislature could pass an unconstitutional hardship measure, the challenged statute is entirely new legislation that must pass constitutional muster.

■ Respondent Cal Pac argues that even if the window provision is unconstitutional, it may not be severed from the rest of Assembly Bill No. 2074, because to do so would carry out a different purpose than that intended by the Legislature. While Cal Pac states that invalidation of the window provision would amount to a "complete rewriting" of the statute, it also argues that the alternative—invalidation of the entire Robinson Act—is beyond this court's powers.

We disagree. The result of severing the window provision is hardly as drastic as Cal Pac contends. Quoting from *Hale* v. *McGettigan* (1896) 114 Cal. 112, 119 [45 P. 1049], the court in *Board of Osteopathic Examiners* v. *Board of Medical Examiners* (1975) 53 Cal.App.3d 78, 85 [125 Cal.Rptr. 619] described the applicable standards for determining severability as follows:

■ " ' ' "[I]f the different parts of the statute are severable and independent of each other, and the provisions which are within the constitutional power of the Legislature are capable of being carried into effect after the void part has been eliminated, and it is clear from the statute itself that it

was the intent of the Legislature to enact these provisions irrespective of the others, the unconstitutional provisions will be disregarded and the statute read as if these provisions were not there." [Citations.]' "

Turning to the Robinson Act, it is readily apparent that the purpose of the window provision is to "provide a one-time opportunity for cities and counties, acting in concert with affected landowners, to correct inconsistent applications of the provisions of this chapter and thereby to alleviate present and potential hardships . . . ." (Gov. Code, § 51282.1, subd. (a).) And while the purpose of the entire bill is to provide relief from Williamson Act contracts (Gov. Code, § 51280), an uncodified section of the bill further explains that the purpose of the Robinson Act "is not to weaken or strengthen the Williamson Act but simply to clarify and make the law workable in light of problems and ambiguities created by the California Supreme Court decision in the case of Sierra Club v. City of Hayward, 28 Cal.3d 840." (Stats. 1981, ch. 1095, § 8, p. 4254.)

The majority of the provisions of the Act serve to codify and explain the findings necessary for cancellation after the *Sierra Club* decision. Section 51282.1 provides only a one-time escape from Williamson Act contracts. The window provision alone was repealed by its own terms on January 1, 1983. Clearly the statutory scheme was intended to operate without the window after 1982. The purpose of section 51282.1, to provide a one-time exit, is thus seen as distinct from the clarifying purpose of the balance of the Act.[7] If section 51282.1 is severed, the statute is still complete and valid as to the permanent cancellation rules. No rewriting of the statutory scheme will result if the window is severed.

For the foregoing reason the judgment is reversed. This determination disposes of all claims as a matter of law; thus the trial court is directed to enter judgment for appellants consistent with the views expressed herein.

Racanelli, P. J., concurred.

**HOLMDAHL, J.**—I respectfully dissent.

---

[7]Cal Pac argues that circumstances such as the presence of opponents of the *Sierra Club* decision as authors of the amended version of Assembly Bill No. 709, which contained the window provision, evidences an intent that the window not be severable. To the same effect, the fact that the Sierra Club itself was neutral on the window provision is urged as evidence that even supporters of the decision saw the window as a nonseverable compromise provision. Neither *these facts nor references regarding the motives of individual legislators will* support a conclusion that all who supported the bill shared this view. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371].) We conclude that the specific provisions of the statute itself support the conclusion that the statute is intended to operate without the window provision.

It is certainly the prerogative of this court to conclude that the Robinson Act window provision is unconstitutional. The prerogative exists, of course, whether or not the holding in *Honey Springs Home Owners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122 [203 Cal.Rptr. 886] "regarding the constitutionality of the window provision is dicta."

It is apparent, however, that the *Honey Springs* court *thought* it was dealing definitively with the constitutional question, as indicated by its numerous references to it[1] and by the court's detailed treatment of the issue. I think its holding is not dicta, and I think its conclusion that the statute is constitutional is correct.

Article XIII, section 8,[2] does direct "the Legislature to 'define' open space land," as stated by the majority of this court. However, its plain language also does far more, I believe, than "merely [allow] the Legislature to specify the 'manner' in which land is enforceably restricted." Indeed, the people have *mandated* that if and when the Legislature does define "open space land," such land shall be "enforceably restricted, *in a manner specified by the Legislature.*"[3] (Cal. Const., art. XIII, § 8, italics added.)

I consider the disagreement of my colleagues with respondents' argument "that the Constitution allows the Legislature to define the terms 'enforceably restricted' in any way it chooses" to be rather academic. The fact of the matter is that the Legislature has, at all points in time, enacted restrictions and that those restrictions are enforceable. One might prefer that such restrictions were more numerous or more severe or less numerous or less severe. Such determinations, however, are properly legislative, and not judicial, functions.

While my colleagues "find no indication that the constitutional provision permits the Legislature to define enforceable restrictions *at all,* much less to define restrictions which do not actually serve to restrict the use of the land at issue," they do not tell us whom "the constitutional provision per-

---

[1] See, e.g., *id.*, at pages 1127, 1128, 1146, and 1147.

[2] Article XIII, section 8, provides in relevant part: "To promote the conservation, preservation and continued existence of open space lands, the Legislature may define open space land and shall provide that when this land is enforceably restricted, in a manner specified by the Legislature, to recreation, enjoyment of scenic beauty, use or conservation of natural resources, or production of food or fiber, it shall be valued for property tax purposes only on a basis that is consistent with its restrictions and uses."

[3] The "manner" of such restriction is thus left for legislative determination. I take "manner" to mean far more than my colleagues' prescription of "the procedure by which land is restricted." The dictionary definition provided in the majority opinion also includes "kind" and "sort"—words relating to substance, rather than to "a mode of procedure," the alternative definition chosen by the majority.

mits . . . to define enforceable restrictions." Certainly the language of article XIII, section 8, confers such authority only upon the Legislature.

Except for conceivable "restrictions" that are clearly not restrictions and except for conceivable restrictions that are clearly not "enforceable," are we, the judiciary, really entitled to overrule the combined actions of the legislative and executive branches of government in their determination of such restrictions? Article XIII, section 8, certainly does not confer such authority. I find no such authority elsewhere in the Constitution.

*Honey Springs* describes the cancellation procedures of the Williamson Act, as modified by the Robinson Act, as being "highlighted by the stringent findings required under the permanent provisions" and the window-period cancellation provisions as being "also sufficiently enforceably restrictive." (*Honey Springs Homeowners Assn.* v. *Board of Supervisors, supra,* 157 Cal.App.3d at p. 1147.) I agree.

I would affirm the judgment.

The petitions of defendant and respondent and real parties in interest and respondents for review by the Supreme Court were denied May 29, 1986. Broussard, J., Reynoso, J., and Grodin, J., were of the opinion that the petitions should be granted.