TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 85-1002 |
|  | : |  |
| of | : | APRIL 22, 1986 |
|  | : |  |
| JOHN K. VAN DE KAMP | : |  |
| Attorney General | : |  |
|  | : |  |
| RODNEY O. LILYQUIST | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____

THE HONORABLE MILTON MARKS, MEMBER, CALIFORNIA SENATE, has requested an opinion on the following questions:

Does the term "full cash value" as used in Government Code section 51283 have the same meaning as the definition set forth in Revenue and Taxation Code section 110.1?

CONCLUSION

The term "full cash value" as used in Government Code section 51283 does not have the same meaning as the definition set forth in Revenue and Taxation Code section 110.1.

1

ANALYSIS

In 1965 the Williamson Act (Gov. Code, §§ 51200-51298; "Act")[1] was enacted by the Legislature to preserve open space and agricultural land. It authorizes cities and counties to enter into a contract with a landowner whereby the amount of the assessed property taxes is reduced in return for keeping the land as an agricultural preserve for a minimum of ten years. (See generally *Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 850-851; *Lewis* v. *City of Hayward* (1986) 177 Cal.App.3d 103, 108; *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1130-1131; *Shellenberger* v. *Board of Equalization* (1983) 147 Cal.App.3d 510, 513-514; *Dorcich* v. *Johnson* (1980) 110 Cal.App.3d 487, 492-493; *County of Orange* v. *Cory* (1979) 97 Cal.App.3d 760, 762-763.)

If certain stringent requirements are met, an agricultural preserve contract may be cancelled. (§§ 51280- 51286.) The question presented for analysis concerns the fee imposed under section 51283 for cancellation of a contract. Does the term "full cash value" as used in section 51283 have the same meaning as the definition of "full cash value" contained in Revenue and Taxation Code section 110.1? We conclude that it does not.

Section 51283 provides:

"(a) Prior to any action by the board or council giving tentative approval to the cancellation of any contract, the county assessor of the county in which the land is located shall determine the *full cash value* of the land as though it were free of the contractual restriction. The assessor shall certify to the board or council the cancellation valuation of the land for the purpose of determining the cancellation fee.

"(b) Prior to giving tentative approval to the cancellation of any contract the board or council shall determine and certify to the county auditor the amount of the cancellation fee which the land- owner shall pay the county treasurer as deferred taxes upon cancellation. That fee shall be an amount equal to 12-1/2 percent of cancellation valuation of the property.

"(c) If they find that it is in the public interest to do so, the board or council may waive any payment or any portion of a payment by the landowner, or may extend the time for making the payment or a portion of the payment contingent upon the future use made of the land and its

---

[1] All references hereafter to the Government Code are by section number only.

economic return to the landowner for a period of time not to exceed the unexpired period of the contract, had it not been cancelled, if all of the following occur:

"(1)  The cancellation is caused by an involuntary transfer or change in the use which may be made of the land and the land is not immediately suitable, nor will be immediately used, for a purpose which produces a greater economic return to the owner.

"(2)  The board or council has determined it is in the best interests of the program to conserve agricultural land use that the payment be either deferred or not required.

"(3)  The waiver or extension of time is approved by the Secretary of the Resources Agency. The secretary shall approve a waiver or extension of time if the secretary finds that the granting of the waiver or extension of time by the local agency is consistent with the policies of this chapter and that the local agency complied with this article.  In evaluating a request for a waiver or extension of time, the secretary shall review the findings of the board or council, the evidence in the record of the local agency, and any other evidence the secretary may receive concerning the cancellation, waiver, or extension of time.

"(d)  When deferred taxes required by this section are collected, they shall be transmitted by the county treasurer to the Controller and be deposited in the General Fund.  The funds collected by the county treasurer with respect to each cancellation of a contract shall be transmitted to the Controller within 30 days of the board's or council's execution of a certificate of cancellation of contract, as specified in subdivision (b) of Section 51283.4.

"(e)  The first four hundred fifty thousand dollars ($450,000) of revenue paid to the Controller pursuant to subdivision (d), in the 1984-85 fiscal year and any fiscal year thereafter, shall be paid to the State Treasury to the credit of the Farmlands Mapping Account, which is hereby created in the General Fund.  These funds shall be available for appropriation to the Department of Conservation for purposes of the farmlands mapping and monitoring program established pursuant to Section 65570.  All unencumbered funds in the Farmlands Mapping Account as of June 30 of each fiscal year shall revert to the General Fund.

"(f)  In addition to the amount of funds deposited in the Farmlands Mapping Account pursuant to subdivision (e), a one-time additional one hundred forty-eight thousand dollars ($148,000) of the revenue paid to the Controller, pursuant to subdivision (d), shall, upon appropriation by the Legislature, be deposited in the account and utilized by the Department of Conservation to prepare Interim Farmland maps as permitted by subdivision (d) of Section 65570."  (Emphasis added.)

Revenue and Taxation Code section 110.1 states:

"(a)  For purposes of subdivision (a) of Section 2 of Article XIII A of the California Constitution, 'full cash value' of real property, including possessory interests in real property, means the fair market value as determined pursuant to Section 110 for either of the following:

"(1)  The 1975 lien date.

"(2)  For property which is purchased, is newly constructed, or changes ownership after the 1975 lien date, either of the following:

"(A)  The date on which a purchase or change in ownership occurs.

"(B)  The date on which new construction is completed, and if uncompleted, on the lien date.

"(b)  The value determined under subdivision (a) shall be known as the base year value for the property.

". . . . . . . . . . . . . . . . . . . . . ."[2]

In interpreting these statutes, we may be guided by several well established principles of statutory construction.  The primary rule to be followed is to "ascertain the legislative intent so as to effectuate the purpose of the law." (*Moore* v. *Panish* (1982) 32

---

[2] Revenue and Taxation Code section 110 provides:

"Except as is otherwise provided in Section 110.1, 'full cash value' or 'fair market value' means the amount of cash or its equivalent which property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other and both with knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions upon those uses and purposes."

4

85-1002

Cal.3d 535, 541.) To determine such intent, we must turn first to the language itself. (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764.) "'Excepting when clearly otherwise intended or indicated, words in a statute should be given their ordinary meaning and receive a sensible construction in accord with the commonly understood meaning thereof." (*Valley Circle Estates* v. *VTN Consolidated, Inc*. (1983) 33 Cal.3d 604, 608.) Finally, "the legislative history of the statute and the wider historical circumstances of its enactment are legitimate and valuable aids in divining the statutory purpose." (*California Mfrs. Assn*. v. *Public Utilities Com*. (1979) 24 Cal.3d 836, 844.)

Applying these principles, we find that both subdivisions (b) and (d) of section 51283 specify that the cancellation fee constitutes "deferred taxes." Newly enacted section 51283.5 (Stats. 1985, ch. 1342, § 2) refers to the cancellation fee of section 51283 as constituting "deferred taxes." Since its enactment, section 51283 has referred to the cancellation fee as representing the recapture of preferential tax benefits previously given to a landowner under the terms of the Act. (See Stats. 1969, ch. 1372; § 35; *County of Orange* v. *Cory*, *supra*, 97 Cal.App.3d 760, 764-765.) The reason the fee is paid over to the state is that under a separate statutory scheme, the state provides local governments with revenues to replace property taxes lost due to the reduced property assessments required by the Act. (§§ 16140-16154; *Dorcich* v. *Johnson*, *supra*, 110 Cal.App.3d 487, 495-496; *County of Orange* v. *Cory*, *supra*, 97 Cal.App.3d 760, 764-768.)[3]

Accordingly, one of the purposes of the section 51283 cancellation fee is to recapture tax benefits previously received under the Act's provisions. (See *Dorcich* v. *Johnson*, *supra*, 110 Cal.App.3d 487, 494-496; *County of Orange* v. *Cory*, *supra*, 97 Cal.App.3d 760, 764-768; 56 Ops.Cal.Atty.Gen. 8, 10 (1973); Dyer, *Estate Tax Savings and the Family Farm: A Critical Analysis of Section 2032A of the Internal Revenue Code* (1978) 11 U.C. Davis L.Rev. 81, 88; Mix, *Restricted Use Assessment in California: Can it Fulfill its Objectives?* (1971) 11 Santa Clara L.Rev. 259, 263-268.)

The section 51283 cancellation fee, however, also serves another function: it represents an economic deterrent to cancellation of the contract. The fee is imposed "as a deterrent to the landowner to seek cancellation during the early years of the contract and to ensure that owners who execute agreements are not speculators looking for a short- term tax shelter." (*Dorcich* v. *Johnson*, *supra*, 110 Cal.App.3d 487, 496.) The fee "is to discourage early cancellation of the contracts." (*Lewis* v. *City of Hayward*, *supra*, 177 Cal.App.3d 103, 109.) "To further discourage premature cancellations, the

---

[3] The state subvention program also explains why state approval must be obtained by a city or county when it seeks to waive collection of all or any portion of the cancellation fee. (§ 51283, subd. (c); *Dorcich* v. *Johnson*, *supra*, 110 Cal.App.3d 487, 496.)

85-1002

Legislature required a cancellation fee ( 51283) . . . ." (*Honey Springs Homeowners Assn.* v. *Board of Supervisors*, *supra*, 157 Cal.App.3d 1122, 1131.)[4] "To further prevent speculators and developers from using the Williamson Act as a 'tax shelter,' it imposes a cancellation fee ( 51283) . . . ." (*Id.*, at p. 1147.)

By its own terms, on the other hand, Revenue and Taxation Code section 110.1 defines "full cash value" in a technical and limited sense "[f]or purposes of subdivision (a) of Section 2 of Article XIII A of the California Constitution." The constitutional provision, the result of voter approval of Proposition 13 in June of 1978, generally requires that taxes on real property be limited to one per percent of the property's "full cash value," which is the value "as shown on the 1975-76 tax bill" increased yearly by "the inflationary rate not to exceed 2 percent." (See *Shellenberger* v. *Board of Equalization*, *supra*, 142 Cal.App.3d 510, 514.)[5]

Prior to the enactment of Revenue and Taxation Code section 110.1 in 1978 (Stats. 1978, ch. 292, § 27), "full cash value" had a well established meaning of current fair market value. (See Stats. 1978, ch. 292, § 26; Stats. 1974, ch. 311, § 3; Stats. 1971, ch. 1542, § 2; Stats. 1941, ch. 605, § 1; Cal. Admin. Code, tit. 18, § 2; *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 21; *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 564-565; *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 623; *Shellenberger* v. *Board of Equalization*, *supra*, 147 Cal.App.3d 746, 752-753; Note, *The California Land Conservation Act of 1965 and the Fight to Save California's Prime Agricultural Lands* (1979) 30 Hastings L.J. 1859, 1862; Mix, *Restricted Use Assessment in California: Can it Fulfill its Objectives?* (1971) 11 Santa Clara L.Rev. 259, 262; Bowden, *Article XXVIII--Opening the Door to Open Space Control* (1970) 1 Pacific L.J. 461, 495-497.)

---

[4] The courts speak in terms of "early" and "premature" cancellations, since the fee is basically a fixed amount during the life of the contract and would be increasingly offset by the tax savings, thereby lessening its deterrent effect during the latter years. (See Mix, *Restricted Use Assessment in California: Can it Fulfill its Objectives?* (1971) 11 Santa Clara L.Rev. 259, 263-268.)

[5] Subdivision (a) of section 1 of article XIII A provides in part:

"The maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property."

Subdivision (a) of section 2 of article XIII A states:

"The full cash value means the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment. . . ."

85-1002

Unquestionably "full cash value" as used in section 51283 did not have the same meaning as set forth in Revenue and Taxation Code section 110.1 when section 51283 was first enacted (Stats. 1969, ch. 1372, § 35). The "roll-back" to the 1975 lien date provision was impossible to implement in 1969. Moreover, section 51283 at that time specified that the calculation of the fee was to be based upon the 25 percent reduction formula then in effect for assessing property. (See 65 Ops.Cal.Atty.Gen. 136 (1982).) When this administrative practice was changed to a 100 percent valuation formula, the Legislature removed the 25 percent reduction provision from the section 51283 calculations. (See Stats. 1981, ch. 261, § 8; Stats. 1980, ch. 585, § 1.) To maintain the same amount of the fee, however, the Legislature correspondingly reduced the rate for the fee calculation from 50 percent to 12-1/2 percent.

All of these legislative acts with respect to section 51283 are consistent with defining "full cash value" as current fair market value. Such statutory history supports the conclusion that Revenue and Taxation Code section 110.1 defines "full cash value" for purposes other than section 51283.

Nonetheless, it may reasonably be argued that the amount of the cancellation fee should be reduced as a consequence of Proposition 13. The general effect of the constitutional amendment was to reduce taxes on real property. The tax "savings" under the Act's provisions for agricultural preserve lands have thus been lessened as well. (See Micek & Weubbe, *The California Farmland Trust: The Proposal to Balance the Rural and Urban Land Use Needs of California* (1984) 18 U.S.F. L.Rev. 171, 201-202; Cologne, *California Land Conservation Survives Another Challenge* (1984) 12 Western St.U. L.Rev. 35, 40-41; Note, *Proposition 13: A Mandate to Reevaluate the Williamson Act* (1981) 54 So. Cal. L.Rev. 93, 116-121.) Since one purpose of the cancellation fee is to recoup the tax savings previously received, the fee arguably should also be reduced. The manner in which this may be accomplished is by using the Revenue and Taxation Code section 110.1 definition of "full cash value" in making the section 51283 calculations.

As previously mentioned, however, "full cash value" is defined in Revenue and Taxation Code section 110.1 "[f]or purposes of subdivision (a) of Section 2 of Article XIII A of the California Constitution." The statute does not say: "for purposes of the Williamson Act." Although the Act provides a method for assessing real property taxes, no direct link may be found between the Act and article XIII A of the Constitution. In particular, the tax recapture and deterrent functions of the cancellation fee under section 51283 are readily distinguishable from defining "full cash value" for purposes of imposing property taxes. While the constitutional provision also limits and reduces property taxes, it does so in a different manner than the one employed for contract lands

7

under the Act. (See Rev. & Tax. Code, § 423.)[6] In short, the deterrent function of section 51283 has no relation to the constitutional provision and recapturing tax benefits received under the Act cannot reasonably be said to serve the purposes of article XIII A. Hence, Revenue and Taxation Code section 110.1 is inapplicable under its own terms.

Additionally, the lesson of *Sierra Club* v. *City of Hayward*, *supra*, 28 Cal.3d 840, 864, as well as *Lewis* v. *City of Hayward*, *supra*, 177 Cal.App.3d 103, 113, is that the cancellation provisions of the Act require a narrow and strict construction against easy cancellation so as to assure the constitutionality of the Act.

If the Legislature intends to change the definition of a term used in section 51283 that has an established and settled meaning, especially where the change weakens the deterrent function of the statute recently stressed by the courts, the Legislature must speak more plainly than it has in Revenue and Taxation Code section 110.1. What we believe would be necessary is for the Legislature to either amend section 51283 itself to reflect the new constitutionally restricted definition of "full cash value,"[7] or in some other direct manner indicate that section 51283 is to incorporate the new constitutional definition. No doubt the Legislature may do so, possibly to encourage additional participation in the program or to emphasize the "deferred taxes" recapture function. It has not done so, however, possibly to emphasize the "deterrent" purpose of the fee and knowing also that the fee may be waived in whole or in part under appropriate circumstances.

We recognize that the State Board of Equalization ("Board") has administratively construed the term "full cash value" in section 51283 as having the same meaning as the definition contained in Revenue and Taxation Code section 110.1. (See Cal. St. Bd. of Equal., Assessors' Handbook, the Valuation of Open-Space Property (1983) p. 521A-80; see also Cal. Admin. Code, tit. 18, §§ 460, 470.) The Board is charged with instructing assessors in the performance of their various duties. (See §§ 15606, 51202-51203; *Pope* v. *State Bd. of Equalization* (1983) 146 Cal.App.3d 1132, 1135, fn. 3.) However, it does not have the authority to change the meaning of a statute without constitutional or legislative directive. (See *Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816; *Woods* v. *Superior Court*

---

[6] If certain conditions are met and the contract land would receive a lower valuation by using the constitutional method, the landowner is given the benefit of the lower assessment. (Rev. & Tax. Code, §§ 423, 423.3.)

[7] As previously mentioned, for example, the Legislature did change the provisions of section 51283 (see Stats. 1981, ch. 261, § 8; Stats. 1980, ch. 585, § 1) at the time all property taxes went from a 25 percent valuation formula to a 100 percent valuation formula.

(1981) 28 Cal.3d 668, 679; *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 419.)

It is true that the Legislature has amended section 51283 four times (Stats. 1980. ch. 585, § 1; Stats. 1981, ch. 261, § 8; Stats. 1983, ch. 864, § 1, Stats. 1985, ch. 1342, § 1) since the administrative ruling of the Board was first given, and the Legislature has not specified a different definition. In *Action Trailer Sales, Inc.* v. *State Bd. Equalization* (1975) 54 Cal.App.3d 125, 133-134, the court stated:

"[W]here the Legislature has amended the statute in question it may be presumed that the amendments were made with full knowledge of the construction placed on the statute by the administrative agency in its administrative ruling. Thus, where the Legislature has failed to modify the statute so as to require an interpretation contrary to the regulation, that fact may be considered to be an indication that the ruling was consistent with the Legislature's intent."

On the other hand, in *County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 404, the Supreme Court explained why the Legislature may not always act to correct an erroneous judicial construction of a statute:

"The Legislature's failure to act may indicate many things other than approval of a judicial construction of a statute: the '"sheer pressure of other and more important business,"' '"political considerations,"' or a '"tendency to trust to the courts to correct their own errors . . . ."'"

Such considerations, as well as the possibility that the Legislature is unaware of the particular interpretation, would be equally applicable to an erroneous administrative construction of a statute.

On balance we believe that Revenue and Taxation Code section 110.1 has not affected the meaning of "full cash value" as that phrase is used in section 51283. No other statute appears to have changed the meaning of the term for purposes of section 51283.[8] We thus conclude in answer to the question presented that the term "full cash

---

[8] Section 51202 states that for all purposes of the Act, "county-assessed values shall be used." Section 51203 provides: "The assessed valuations referred to in section 51283, upon the request of either of the parties to the contract, will be subject to equalization pursuant to Section 1604 of the Revenue and Taxation Code." Neither statute, however, explains whether the assessor is to use the 1975 or the current market value in determining the "full cash value" of the property for purposes of calculating the cancellation fee.

value" as used in section 51283 has the meaning of current fair market value and not the meaning of "full cash value" as defined in Revenue and Taxation Code section 110.1.

*****